# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| SARAH MINAR, DOB XX/XX/1985 | ) | Case No. 21 MJ 122 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  March 20, 2019 & April 5, 2019  in the county of  Milwaukee  in the  Eastern  District of  Wisconsin , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), (b)(1)(B). | Distribution of a controlled substance that is 5 grams or more of methanphetamine |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

NICHOLAS LANCASTER
Digitally signed by NICHOLAS LANCASTER
Date: 2021.07.02 09:06:44 -05'00'

*Complainant's signature*

DEA Special Agent Nicholas Lancaster
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: July 2, 2021

*[signature: William E. Duffin]*
*Judge's signature*

City and state:  Milwaukee, Wisconsin   Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Nicholas J. Lancaster, being first duly sworn, hereby depose and state as follows:

## I. AGENT BACKGROUND AND INFORMATION

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been so employed since September 2015. Prior to my employment with DEA, I was employed as a federal law enforcement officer with the United States Secret Service for approximately four years.

2. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3. I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4. I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled

substances, records pertaining to the expenditures and profits realized from narcotics trafficking, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking.

5. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

6. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

7. Because this affidavit is submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

8. I am submitting this affidavit in support of a Federal Criminal Complaint for Sarah MINAR (DOB 04/10/1985), in the State and Eastern District of Wisconsin. As will be shown below, there is probable cause to believe that on March 20, 2019, and April 5, 2019, Sarah MINAR committed the crime of Distribution of a Controlled Substance, that is 5 grams or more of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B). Law enforcement also conducted three additional controlled purchases from MINAR in 2019.

## II. PROBABLE CAUSE

9. In May, 2019, the Milwaukee DEA utilized a confidential source (hereinafter referred to as "CS") who had information on a subject that distributed multiple ounces of crystal meth. The subject was identified as Sarah MINAR (hereinafter referred to as "MINAR"). The CS successfully provided the phone number of a DEA Undercover Agent (UC) to MINAR as a potential meth customer. During the following five months, the UC was in contact with MINAR. The UC negotiated and arranged five separate purchases of crystal meth from MINAR using recorded phone calls and text messages.

10. I and other law enforcement officers believe CS to be reliable because he/she has provided intelligence concerning drug trafficking activities of MINAR and other drug traffickers that have been corroborated through investigations and enforcement operations. The CS made statements against his/her own penal interests. The CS played a minimal role in this investigation. After the CS passed the UC phone number to MINAR, and MINAR reached out to the UC, the investigation was conducted using a DEA UC and the CS had no further involvement. The CS is no longer an active DEA CS. The CS had no negative evaluations and was deactivated for having no further information for law enforcement.

### Controlled Buy #1, 3/20/2019

11. On 3/19/19, a DEA UC received a phone call, and had an ongoing conversation through 3/20/19 from/with a female later identified as Sarah L. MINAR (DOB: 04/10/1985), and an undercover controlled purchase of crystal methamphetamine was arranged. On 3/20/19, at approximately 1:30 p.m., DEA and West Allis surveillance teams established observational positions in the area of S 26th St. and W National Ave in Milwaukee, WI, with specific lines of sight to 742 S 26th St., as well as McDonalds 2520 W National Ave. At this same approximate

3

time, surveillance teams were notified over the radio that the UC had made contact with MINAR and confirmed the arrangements for the purchase of Methamphetamine. At approximately 1:43 p.m., the UC arrived in the McDonalds parking lot, driving an undercover vehicle (UCV), as observed by DEA surveillance.

12. At approximately 1:44 p.m., surveillance observed a white female exit the red front door on 742 S 26th St. The female was later identified as MINAR, and was easy for surveillance members to follow due to her dyed pink hair. Surveillance observed MINAR walking southbound on S. 26th St. toward McDonalds, then eastbound on W. National Ave.

13. At approximately 1:45 p.m., DEA surveillance observed MINAR approach and enter the UCV in the McDonalds parking lot. All surveillance teams were also aware that the UC had contacted MINAR while listening to a live audio device transmitting from the UCV.

14. The UC and MINAR exchanged greetings. MINAR related she walked to the location, as she lived down the street, middle of the block [which would be consistent with her known address at the time, 742 S. 26th St]. MINAR handed the UC a white envelope, which contained a clear plastic baggy, which contained approximately one ounce of suspected crystal methamphetamine. The UC then handed MINAR $1000 of Official Advanced Funds (OAF), and requested MINAR count the money. The UC and MINAR spoke further. During the conversation, the UC referred to himself as an "outlet" [distributor]. After some additional conversation, the UC and MINAR exchanged parting statements. MINAR then exited the UCV. The UC left the scene in the UCV and traveled back to a predetermined meet location.

15. The UC transferred custody of approximately one ounce of crystal methamphetamine (later identified as Exhibit 1) over to case agents. An electronic TruNarc device was utilized to test the exhibit which returned positive for methamphetamine. Case agents weighed

4

the exhibit: gross weight including all evidence packaging at 61.81 grams, and also weighed the exhibit only contained in its clear plastic baggie at 30.09 grams. Case agents sealed the exhibit inside SSEE S000892809. The exhibit was sent to the North Central Lab for further analysis and safekeeping.

**Controlled Buy #2, 4/5/2019**

16. On 04/03/19, the UC began an ongoing text message conversation through 04/05/19 from/with a Sarah L. MINAR (04/10/1985), and an undercover (UC) controlled purchase of crystal methamphetamine was arranged. On 04/05/19, at approximately 12:50 p.m., DEA and West Allis surveillance teams established observational positions in the area of S. 26th St. and W National Ave in Milwaukee, WI, with specific lines of sight to 742 S 26th St., as well as McDonalds 2520 W National Ave.

17. At approximately 12:50 p.m., the DEA UC departed from a pre-determined meet location and was followed by case agents. The UC was driving an undercover vehicle (UCV), equipped with a live audio device which enabled the surveillance team to listen to the activities inside the UCV. At approximately 1:00 p.m., the UC arrived at the McDonalds located at 2520 W. National Ave., Milwaukee, Wisconsin. The UC advised the surveillance teams that he had received a text message from Sarah MINAR stating that MINAR was on her way to meet the UC at the McDonalds.

18. At approximately 1:11 p.m., surveillance observed a female with brown hair and wearing a white sweater exiting the target residence located at 742 S. 26th St. SA Gray believed the female to be Sarah MINAR. Surveillance observed MINAR walking S/B on S. 26th St. towards W. National Ave., then MINAR turned back to the residence and sat on the steps in front of the target residence. MINAR spent the next several minutes pacing back and forth on S. 26th St. and

5

was observed standing on the corner of S. 26th St. and W. National Ave. talking on the phone. It appeared as if MINAR was waiting for someone before meeting with the UC. At approximately 1:20 p.m., Surveillance observed MINAR walk through the McDonald's parking lot and approach and enter the passenger side of the UCV.

19. The DEA UC and MINAR exchanged greetings. MINAR related she was waiting for her "guy" as she did not have enough. The UC and MINAR spoke about her "guy". In essence, MINAR was telling the UC she did not have enough crystal methamphetamine and she was waiting for her supplier, which she referred to as her "guy". During the conversation, MINAR said he was pulling up right now [the source] and MINAR exited the vehicle.

20. Surveillance observed MINAR walk to a newer red Charger, with tinted windows. The Charger was parked to the east of the UCV, in the McDonald's parking lot. A short period of time passed, and the UC observed MINAR walking from the Charger, towards the UCV. MINAR then entered the passenger side of the UCV. Once MINAR entered the UCV, the UC and MINAR started negotiating price and discussed her supplier. MINAR then placed a plastic bag containing suspected crystal methamphetamine on the center console of the UCV. The UC transferred $975 of Official Advanced Funds (OAF) to MINAR for the crystal methamphetamine. The UC requested MINAR count the money that the UC just gave her. The UC negotiated the potential price of $975.00 today, but agreed to $1000. The UC handed MINAR the other $25.00 and negotiated a discount in the future. The UC inspected the crystal methamphetamine and eventually placed it into the center console of the UCV.

21. The UC then asked MINAR for the price for 2 ounces of crystal methamphetamine. MINAR mentioned some prices and finally agreed on $1400.00 for 2 ounces of crystal methamphetamine. The UC mentioned something to MINAR about being on time, and MINAR

replied she usually had it but she was short. After some parting statements, MINAR exited the UCV.

22. Surveillance observed MINAR get into her sources red Dodge Charger. The Charger vehicle departed and dropped MINAR off at 742 S. 26th St. The surveillance team continued to follow the target vehicle. The DEA UC transported the suspected crystal methamphetamine, later identified as exhibit 2, to the Milwaukee DO, where case agents tested the exhibit with a TruNarc electronic device with positive results for methamphetamine. The exhibit was then processed in to evidence. The sale of suspected crystal methamphetamine from MINAR to the DEA UC was captured on two covert cameras. In addition, the calls/texts between the UC and MINAR were also captured on an electronic device.

### III. CONCLUSION

23. Based on the above information, I submit that there is probable cause to believe that on or about March 20, 2019, and April 5, 2019, Sarah MINAR committed the crime of Distribution of a Controlled Substance, that is 5 grams or more of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).